IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEANDRO ESCALANTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-1871-L-BN |
| | § | |
| PRESTON HAMMEL, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Leandro Escalante filed a *pro se* complaint against the City of Irving,
Texas and two of its police officers alleging that, during a traffic stop in October 2021,
his constitutional rights were violated. *See* Dkt. No. 3.

United States District Judge Sam A. Lindsay referred Escalante's lawsuit to
the undersigned United States magistrate judge for pretrial management under 28
U.S.C. § 636(b) and a standing order of reference.

Defendants moved to dismiss the complaint under Federal Rule of Civil
Procedure 12(b)(6). *See* Dkt. Nos. 6 & 7. Escalante responded. *See* Dkt. No. 12.
Defendants replied. *See* Dkt. No. 13. And the Court struck and unfiled Escalante's
unauthorized sur-reply. *See* Dkt. Nos. 14 & 15; *Gezu v. Charter Commc'ns*, 17 F.4th
547, 555-56 (5th Cir. 2021) (observing that, because neither this Court's local rules
nor the Federal Rules of Civil Procedure authorize sur-replies "as a matter of right,
the district court only accepts such filings 'in exceptional or extraordinary
circumstances'" (quoting *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001))).

The undersigned now enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should grant the motion to dismiss and dismiss this lawsuit with prejudice unless a reason for leave to amend the complaint is demonstrated through timely objections.

## Legal Standards

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, Fed. R. Civ. P. 8(a)(2)))).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of*

*Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

In sum, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting Fed. R. Civ. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)

(quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g., Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

## Analysis

Based on Officer Hammel's stopping Escalante for his failing to stop at a stop line early on the morning of October 14, 2021 – for which Hammel issued Escalante a traffic ticket, which was later dismissed – Escalante sues Officers Hammel and

Munoz (in their individual capacities) and the City chiefly under 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights.

Escalante's claims include that Hammel's traffic stop was a seizure that violated the Fourth Amendment, that Munoz is liable under a theory of bystander liability, that there existed a conspiracy in violation of Section 1983, that he was maliciously prosecuted in violation of the Fourth Amendment, and that the City itself is liable.

The plausibility of these claims mostly begins and ends with the traffic stop itself. Because, based on Escalante's own factual allegations, *see* Dkt. No. 3-1 at 14-19, the stop was justified, and the officers' subsequent actions were reasonable. So the Fourth Amendment was not violated. And Escalante's resulting claims are not plausible alleged.

"The Fourth Amendment prohibits unreasonable searches and seizures." *United States v. Wright*, 57 F.4th 524, 530 (5th Cir. 2023) (citations omitted).

And "[w]hen the police stop a vehicle and detain the occupants, they have effected a Fourth Amendment 'seizure'" that is commonly called a *Terry* stop. *Johnson v. Thibodeaux City*, 887 F.3d 726, 733 (5th Cir. 2018) (citing *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc)); *see also Wright*, 57 F.4th at 530 ("A *Terry* stop is a special category of Fourth Amendment seizures, in which an officer may briefly detain an individual for further investigation, if the officer has reasonable suspicion the individual is engaged in criminal activity." (cleaned up; citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *Dunaway v. New York*, 442 U.S. 200, 210

- 7 -

(1979))).

To "review the legality" of *Terry* stops, courts "first examine whether the officer's action was justified at its inception and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Henry*, 37 F.4th 173, 176 (5th Cir. 2022) (per curiam) (citing *Brigham*, 382 F.3d at 506).

"The 'touchstone of the Fourth Amendment is reasonableness,' and reasonableness is measured 'in objective terms by examining the totality of the circumstances .... eschew[ing] bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.'" *United States v. Del Angel*, No. 20-20258, 2022 WL 1549479 (5th Cir. May 17, 2022) (per curiam) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991); *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

"Reasonableness requires a balancing of the public interest with an individual's right to be free from arbitrary intrusions by law enforcement," while "courts must allow officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Henry*, 37 F.4th at 176-77 (cleaned up); *see also United States v. Aguilar*, DR-07-CR-844(1),(2)-AML, 2008 WL 11357945, at *5 (W.D. Tex. Oct. 29, 2008) ("It is generally reasonable for a police officer to stop a vehicle when there is probable cause that a traffic violation has occurred." (citing *Delaware v. Prouse*, 440 U.S. 648, 659 (1979))).

The facts alleged show that the stop was justified at its inception. When

Escalante asked Hammel why he was stopped, Escalante alleges that Hammel responded, "A couple reasons, back here on that oh big white line you went past it, Second of all when you turn make a right You get to turn closer to the curb not to the second lane." Dkt. No. 3-1 at 14; *see* TEX. TRANSP. CODE § 544.010(c) ("An operator required to stop by this section shall stop at a clearly marked stop line."); *Aguilar*, 2008 WL 11357945, at *5 (where the driver defendant "committed numerous traffic violations," including violations of Section 544.010, "find[ing] that the original traffic stop did not violate either of the Defendants' Fourth Amendment rights"); *see also Henry*, 37 F.4th at 176 ("As to the first part, the traffic stop was valid on three bases: Henry (1) littered a cigarette in violation of Texas Health and Safety Code § 365.012(a), (2) sped, and (3) drove on the shoulder of the highway in violation of Texas Transportation Code § 545.058.").

The alleged facts further reveal that the officers' "subsequent actions were reasonably related in scope to the circumstances." *Henry*, 37 F.4th at 176; *compare* Dkt. No. 3-1 at 14-19 (Hammel asked for Escalante's license and insurance and to verify his address, while the stop was prolonged by Escalante's refusal to answer these and similar inquires generally applicable to a traffic stop), *with Johnson*, 887 F.3d at 734 ("[A]n officer's actions after a legitimate stop [must] be 'reasonably related to the circumstances that justified the stop, or to dispel[ ] his reasonable suspicion [that] developed during the stop.' [And a] reasonable detention 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges.'" (quoting

*Brigham*, 382 F.3d at 507)); *Henry*, 37 F.4th at 176 ("There is no constitutional impediment to a law enforcement officer's request to examine a driver's license during a traffic stop and run a computer check." (footnote omitted)).

And, because Escalante fails to allege that the traffic stop violated the Fourth Amendment, he has not plausibly alleged that Munoz is liable under a theory of bystander liability. *See, e.g.*, *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) ("[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" (cleaned up; quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002))).

The lack of a plausibly alleged constitutional violation also precludes Escalante's conspiracy claim. *See Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) ("To support a conspiracy claim under § 1983, the plaintiff must allege facts that suggest 'an agreement between the ... defendants to commit an illegal act' and 'an actual deprivation of constitutional rights.'" (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994))).

Escalante similarly has not alleged a plausible malicious prosecution claim, a required element of which is "the absence of probable cause for [the resulting criminal] proceeding." *Armstrong*, 60 F.4th at 279 (quoting *Gordy v. Burns*, 294 F.3d 722, 727 (5th Cir. 2002)); *see id.* at 279 n.15 ("Importantly, because an unlawful seizure is the threshold element, if the prosecution is supported by probable cause on

at least one charge, then a malicious prosecution claim cannot move forward." (citing *Thompson v. Clark*, 142 S. Ct. 1332, 1337 n.2 (2022))).

And, to the extent that Escalante asserts a claim against an officer defendant under the Texas Penal Code or based on alleged racial profiling (absent factual allegations of others similarly situated) or under the Fifth Amendment (presumably for an allegedly coerced confession, where the traffic ticket was dismissed), those claims fail too. *See Evans v. City of Dall.*, No. 3:16-cv-561-L, 2017 WL 958607, at *6 (N.D. Tex. Mar. 13, 2017) ("The Texas Penal Code "does not create private causes of action."" (citations omitted)); *Davis v. City of Dawson, Tex.*, No. 3:19-cv-1751-L, 2020 WL 716741, at *4 (N.D. Tex. Jan. 24, 2020) ("To maintain an equal protection claim, a plaintiff typically alleges that he 'received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.' Thus, no equal protection violation is plausibly alleged where a plaintiff fails 'to allege any facts showing that others were similarly situated.'" (citations omitted)), *rec. accepted*, 2020 WL 708026 (N.D. Tex. Feb. 11, 2020); *Ross v. Ellis Cnty. Sheriff Dep't*, No. 3:23-cv-31-X-BN, 2023 WL 2089547, at *2 (N.D. Tex. Jan. 10, 2023) ("[T]o bring a successful coerced confession claim, [the plaintiff] must show (1) that his confession was improperly coerced, and (2) that his confession was used against him in a criminal case." (quoting *Peck v. Robinson*, No. 19 C 3279, 2022 WL 16947896, at *2 (N.D. Ill. Nov. 15, 2022) (citing, in turn, *Chavez v. Martinez*, 538 U.S. 760, 770 (2003)))), *rec. accepted*, 2023 WL 2090993 (N.D. Tex. Feb. 16, 2023).

Likewise, Escalante fails to allege a claim against the City itself.

Because "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage,'" *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting 42 U.S.C. § 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)), a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation," *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694).

As against the City, not only has Escalante failed to allege a constitutional violation – for the reasons set out above – he also fails to allege that "the complained-of 'act may fairly be said to represent official policy.'" *Id.* at 792-93 (cleaned up; quoting *Monell*, 436 U.S. at 694).

Escalante fails to plausibly allege a specific official policy of the City of Irving. And, while an official policy may include "practices so persistent and widespread as to practically have the force of law," to plausibly allege "that a practice is 'so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury.'" *Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 621-22, 622 (5th Cir. 2018)).

So, almost without exception, allegations "limited to the events surrounding the plaintiff" himself cannot constitute "an allegation of a *de facto* policy." *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015).

Instead, "[a] plaintiff can establish a policy by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [municipal] employees." *Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 710 (5th Cir. 2023) (cleaned up; quoting *Martinez v. Nueces Cnty.*, 71 F.4th 385, 389 (5th Cir. 2023)). "That knowledge, coupled with a failure to act, can show the existence of a municipal policy." *Id.*

Since Escalante's allegations are limited to the harm that he purportedly suffered, he has not plausibly alleged an official policy and has therefore not alleged liability against the City under Section 1983. *See, e.g.*, *Johnson*, 83 F.4th at 947 ("Johnson's claim against the county fails because she does not plausibly allege *any* pattern of conduct – much less a pattern of similar violations." (emphasis in original)).

And Escalante's *Monell* claim fares no better if he asserts that the City is liable under a failure-to-train theory, where he must allege (1) that the City "failed to train or supervise" the officers; (2) that "there is a causal connection between the alleged failure to supervise or train and the alleged violation of [his constitutional] rights"; and (3) that "the failure to train or supervise constituted deliberate indifference to [his] constitutional rights." *Peña*, 879 F.3d at 623;

All Escalante has alleged is one incident. And, "[i]n the one case in which [the Fifth Circuit] found a single incident sufficient to support municipal liability, there was an abundance of evidence about the proclivities of the particular officer involved in the use of excessive force." *Valle v. City of Hous.*, 613 F.3d 536, 549 (5th Cir. 2010)

(quoting *Brown v. Bryan Cnty.*, 219 F.3d 450, 462 (5th Cir. 2000)). Escalante includes no similar allegations here.

The Court should therefore grant the motion to dismiss and dismiss the complaint with prejudice.

But the opportunity file objections to this recommendation (further explained below) allows Escalante a chance to cure the deficiencies identified above and thus show the Court that this case should not be dismissed with prejudice at this time and that the Court should instead grant him leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)). *Cf. Martinez*, 71 F.4th at 391 ("If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022))).

## Recommendation

The Court should grant Defendants' motion to dismiss [Dkt. No. 6] and dismiss this lawsuit with prejudice unless Plaintiff Leandro Escalante demonstrates a basis to allow leave to amend through timely objections.

A copy of these findings, conclusions, and recommendation shall be served on

all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

   DATED: April 15, 2024

   DAVID L. HORAN
   UNITED STATES MAGISTRATE JUDGE