IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEANDRO ESCALANTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-1871-L-BN |
| | § | |
| PRESTON HAMMEL, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Leandro Escalante filed a *pro se* complaint against the City of Irving, Texas and two of its police officers alleging that, during a traffic stop in October 2021, his constitutional rights were violated. *See* Dkt. No. 3.

United States District Judge Sam A. Lindsay referred Escalante's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The Court granted a motion to dismiss the original complaint but also granted Escalante leave to file an amended complaint. *See Escalante v. Hammel*, No. 3:23-cv-1871-L-BN, 2024 WL 2886879 (N.D. Tex. Apr. 15, 2024), *rec. accepted in part*, 2024 WL 2186858 (N.D. Tex. May 15, 2024) ("*Escalante I*").

Escalante timely filed a first amended complaint alleging claims under the Fourth Amendment (for unreasonable seizure, malicious prosecution, conspiracy, and supervisory liability) against three defendants in their individual capacities (two Irving police officers, Preston Hammel and Nestor Munoz, and Irving's chief of police,

Derick Miller) [Dkt. No. 24] (the "FAC").

Defendants Hammel, Munoz, and Miller moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 25. Escalante responded, and Defendants replied. *See* Dkt. Nos. 26-28.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should grant the motion to dismiss and dismiss this lawsuit with prejudice.

## Legal Standards

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions. So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and

naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

And, so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (While "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." (cleaned up)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

But pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the

pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)).

And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the

complaint." *Id.*

## Analysis

"Based on Officer Hammel's stopping Escalante for his failing to stop at a stop line [and making a wide right turn] early on the morning of October 14, 2021, for which Hammel issued Escalante a traffic ticket, which was later dismissed," *Escalante I*, 2024 WL 2886879, at *3, Escalante now brings civil claims against Hammel, Munoz, and Miller (all in their individual capacities) under 42 U.S.C. § 1983, alleging that the defendants violated rights protected by the Fourth Amendment.

"Escalante's claims include that Hammel's traffic stop was a seizure that violated the Fourth Amendment, that Munoz is liable under a theory of bystander liability, that there existed a conspiracy in violation of Section 1983, that he was maliciously prosecuted in violation of the Fourth Amendment, and that [Miller, as the police chief, who was not involved with the stop itself, also] is liable." *Escalante I*, 2024 WL 2886879, at *3.

Preliminarily, Escalante filed with the FAC a USB (or thumb) drive containing videos of the traffic stop captured on dash and body cameras. By doing so – effectively attaching the videos to the FAC as exhibits – Escalante made the videos "part of the pleadings for all purposes." FED. R. CIV. P. 10(c).

And, "where video recordings are included in the pleadings … the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly

contradict[s]' those allegations." *Harmon*, 16 F.4th at 1163 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); footnote omitted); *see also Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 298 (5th Cir. 2023) (per curiam) ("If an allegation is qualified by the contents of an exhibit attached to the pleadings, but the exhibit instead contradicts the allegation, 'the exhibit and not the allegation controls.'" (quoting *Riley*, 355 F.3d at 377)); *Kokesh v. Curlee*, 14 F.4th 382, 385 n.2 (5th Cir. 2021) ("Although all alleged facts are taken as if they are true, facts established by a video record control when they clearly contradict the facts contained in a pleading.... There are several points of material fact on which the video clearly contradicts Kokesh's alleged facts. On these facts, the video will control." (citing *Scott*, 550 U.S. at 380-81; *Riley*, 355 F.3d at 377)); *Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2011 WL 3567419, at *9 (N.D. Tex. Aug. 15, 2011) (*Simmons* "instruct[s] that a genuine conflict between the complaint and a pleading exhibit requires that the court accept the exhibit rather than the factual allegations as true.").

And, as the Court previously set out,

> "[t]he Fourth Amendment prohibits unreasonable searches and seizures." *United States v. Wright*, 57 F.4th 524, 530 (5th Cir. 2023) (citations omitted).
> And "[w]hen the police stop a vehicle and detain the occupants, they have effected a Fourth Amendment 'seizure'" that is commonly called a *Terry* stop. *Johnson v. Thibodeaux City*, 887 F.3d 726, 733 (5th Cir. 2018) (citing *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc)); *see also Wright*, 57 F.4th at 530 ("A *Terry* stop is a special category of Fourth Amendment seizures, in which an officer may briefly detain an individual for further investigation, if the officer has reasonable suspicion the individual is engaged in criminal activity." (cleaned up; citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *Dunaway v. New York*, 442 U.S. 200, 210 (1979))).
> To "review the legality" of *Terry* stops, courts "first examine

> whether the officer's action was justified at its inception and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Henry*, 37 F.4th 173, 176 (5th Cir. 2022) (per curiam) (citing *Brigham*, 382 F.3d at 506).
>
> "The 'touchstone of the Fourth Amendment is reasonableness,' and reasonableness is measured 'in objective terms by examining the totality of the circumstances .... eschew[ing] bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.'" *United States v. Del Angel*, No. 20-20258, 2022 WL 1549479 (5th Cir. May 17, 2022) (per curiam) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991); *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).
>
> "Reasonableness requires a balancing of the public interest with an individual's right to be free from arbitrary intrusions by law enforcement," while "courts must allow officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Henry*, 37 F.4th at 176-77 (cleaned up); *see also United States v. Aguilar*, DR-07-CR-844(1),(2)-AML, 2008 WL 11357945, at *5 (W.D. Tex. Oct. 29, 2008) ("It is generally reasonable for a police officer to stop a vehicle when there is probable cause that a traffic violation has occurred." (citing *Delaware v. Prouse*, 440 U.S. 648, 659 (1979))).

*Escalante I*, 2024 WL 2886879, at *3-*4.

The facts alleged – and the videos attached to the FAC – reflect that the stop was justified at its inception.

Asked why the stop was made, Hammel responded – and a video recording shows – that Escalante both failed to stop prior to the marked stop line and made a wide right turn. *See* TEX. TRANSP. CODE § 544.010(c) ("An operator required to stop by this section shall stop at a clearly marked stop line."); *id.* § 545.101(a) ("To make a right turn at an intersection, an operator shall make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway."); *United States v. Onyeri*, 996 F.3d 274, 279 (5th Cir. 2021) (The officer's "observation of this traffic violation" – "an improper turn 'into the number one lane' in violation of Texas

Transportation Code § 545.101" – "gave him an objectively grounded legal justification – and sufficient probable cause – to initiate the stop." (citation omitted)); *Aguilar*, 2008 WL 11357945, at *5 (where the driver defendant "committed numerous traffic violations," including violations of Section 544.010, "find[ing] that the original traffic stop did not violate either of the Defendants' Fourth Amendment rights").

And Hammel's "subsequent actions" during the brief, less-than-15-minute stop – requesting Escalante's driver's license and proof of insurance and attempting to reconcile a conflict between the two as to Escalante's address, all while Escalante was argumentative and resistant to cooperating with routine requests – "were reasonably related in scope to the circumstances." *Henry*, 37 F.4th at 176; *see Johnson*, 887 F.3d at 734 ("[A]n officer's actions after a legitimate stop [must] be 'reasonably related to the circumstances that justified the stop, or to dispel[ ] his reasonable suspicion [that] developed during the stop.' [And a] reasonable detention 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges.'" (quoting *Brigham*, 382 F.3d at 507)); *Henry*, 37 F.4th at 176 ("There is no constitutional impediment to a law enforcement officer's request to examine a driver's license during a traffic stop and run a computer check." (footnote omitted)).

Given this caselaw, neither does Escalante allege a plausible Fourth Amendment claim based on Hammel's asking Escalante the name of his son twice and later informing Escalante that his son had an active warrant, while walking away after telling Escalante that he was free to go.

And, because Escalante fails to allege that the traffic stop violated the Fourth Amendment, he has not plausibly alleged that Munoz is liable under a theory of bystander liability. *See, e.g.*, *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) ("[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" (cleaned up; quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002))).

The lack of a plausibly alleged constitutional violation also precludes Escalante's conspiracy claim. *See Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) ("To support a conspiracy claim under § 1983, the plaintiff must allege facts that suggest 'an agreement between the ... defendants to commit an illegal act' and 'an actual deprivation of constitutional rights.'" (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994))).

Escalante similarly has not alleged a plausible malicious prosecution claim, a required element of which is "the absence of probable cause for [the resulting criminal] proceeding." *Armstrong*, 60 F.4th at 279 (quoting *Gordy v. Burns*, 294 F.3d 722, 727 (5th Cir. 2002)); *see id.* at 279 n.15 ("Importantly, because an unlawful seizure is the threshold element, if the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward." (citing *Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2022))); *Sessanga v. City of DeSoto Police Dep't*, No. 3:24-cv-950-G-BN, 2024 WL 4682750, at *2 (N.D. Tex. Oct. 23, 2024) ("And,

so, [a plaintiff's] argument that police officers violated his right to be free from malicious prosecution 'requires [the officers] to have acted in the absence of probable cause.'" (quoting *Matthews v. Green*, No. 23-10178, 2024 WL 448352, at *3 (5th Cir. Feb. 6, 2024) (per curiam))), *rec. accepted*, 2024 WL 4683661 (N.D. Tex. Nov. 4, 2024).

And, for all the reasons set out above, Escalante has not alleged a plausible claim against Chief Miller based on the single traffic stop.

"Supervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (per curiam) (citation omitted); *see also Blakely v. Andrade*, 360 F. Supp. 3d 453, 489 (N.D. Tex. 2019) (as against an individual defendant, absent plausible allegations to support supervisory liability, "[t]here must be some showing of personal involvement by a particular individual defendant to prevail against that individual" under Section 1983 (citation omitted)).

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. And "[e]stablishing deliberate indifference generally requires a 'pattern of similar violations' arising from a policy 'so clearly inadequate as to be obviously likely to result in a constitutional violation.'" *Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 225 (5th Cir. 2020) (cleaned up; quoting *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003)).

The Court should therefore grant the motion to dismiss.

And the Court should now dismiss this lawsuit with prejudice because Escalante was allowed to file an amended complaint after the Court informed him of the insufficiency of his initial complaint and has thus now pleaded his best case. *See, e.g.*, *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) ("Ordinarily, a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed. Rule 15(a) provides that leave to amend shall be freely given when justice so requires. The language of this rule evinces a bias in favor of granting leave to amend. Granting leave to amend, however, is not required if the plaintiff has already pleaded her best case. A plaintiff has pleaded her best case after she is apprised of the insufficiency of her complaint. A plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court. Similarly, a district court need not grant a futile motion to amend." (cleaned up)).

## Recommendation

The Court should grant Defendants' amended motion to dismiss the first amended complaint [Dkt. No. 25] and dismiss this lawsuit with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 18, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE